**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona  85201
Telephone No.:  (480) 464-1111
Facsimile No.:  (480) 464-5692
Email:  centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiff*
By:  Nathaniel J. Hill, SBN 028151
     Email:  nhill@jacksonwhitelaw.com
     Grant S. Cragun, SBN 034332
     Email:  gcragun@jacksonwhitelaw.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Stacey Kathleen Worrell,<br><br>        Plaintiff,<br><br>v.<br><br>The Learning Experience Systems, LLC, a Delaware limited liability company; Siya Ram Investments LLC, an Arizona limited liability company; and Sanjay J. Patel and Jane Doe Patel,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff Stacey Worrell ("Plaintiff"), by and through her counsel undersigned, brings this lawsuit pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and Arizona Employment Protection Act, A.R.S. § 23-1501, *et seq.* ("AEPA").

## THE PARTIES

1. Plaintiff Stacey Kathleen Worrell is, and at all relevant times to this action has been, a married woman residing in Maricopa County, Arizona.

2. Defendant The Learning Experience Systems, LLC ("Learning Experience") is a Delaware limited liability company doing business in the state of Arizona.

3. Defendant Siya Ram Investments LLC, d/b/a The Learning Experience Eastmark, is an Arizona limited liability company with its principle place of business in Maricopa County, Arizona.

4. Upon information and belief, Defendant Sanjay J. Patel is a married individual residing in Maricopa County, Arizona. The actions alleged in this Complaint against Defendant Sanjay Patel were performed on behalf of and for the benefit of the marital community of Sanjay and Jane Doe Patel rendering their marital community liable for those actions.

5. Defendant Mr. Patel is the owner of Siya Ram Investments, LLC.

6. Defendant Learning Experience is a joint employer with Defendant Siya Ram Investments LLC and Defendant Mr. Patel (collectively, "Defendants", unless stated otherwise herein.

7. Under the FLSA, all Defendants are "employers" as defined by these statutes, including Defendant Mr. Patel in his individual capacity.

8. At all relevant times, Plaintiff was an "employee" of Defendants under the FLSA, 29 U.S.C. § 201, *et seq*. The provisions set forth in the FLSA apply to Defendants.

9. As the owner of Siya Ram Investments, LLC d/b/a The Learning Experience Eastmark, Defendant Mr. Patel had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with the Learning Experience. As a person who acted in the interest of the Learning Experience in relation to the company's employees, Defendant Mr. Patel is subject to individual liability under the FLSA.

10. As a joint employer along with Defendants Mr. Patel and Siya Ram Investments LLC, Defendant Learning Experience collaborated with Defendants Patel and Siya Ram Investments, LLC in supervising and controlling employee work schedules and the conditions of employment, determining the rate and method of payment, and

maintaining employment records in connection with Plaintiff's employment with Learning Experience.

11. At all material times hereto, Defendant Learning Experience acted in its own interest, through its agents and/or employees and is therefore subject to individual liability for the actions of those agents and/or employees under the FLSA.

12. Defendant Learning Experience directed and exercised control over Plaintiff's work and wages, at all relevant times, through an enterprise or an agent.

13. All Defendants are jointly and severally liable for the injuries and damages sustained by Plaintiff.

## JURISDICTIONAL ALLEGATIONS

14. Claims in this action include claims arising under the illegal employment actions of Defendants under the statutes of the United States involving violations of the FLSA's wage and hour provisions. Claims in this matter arise under federal statute, and thereby, this Court has original jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

15. This Court also has supplemental jurisdiction over the state law claims raised in this action pursuant to 28 U.S.C. § 1367 because such claims do not raise novel or complex issues of state law and because those claims derive from a common nucleus of operative facts from which the FLSA claims in this action derive.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because events giving rise to the claims occurred in the State of Arizona within this District.

17. The United States District Court for the District of Arizona has personal jurisdiction because Defendants conduct business within this District and the actions giving rise to this Complaint occurred in this District.

18. As provided for by the FLSA, 29 U.S.C. § 216(b), this action is brought by Plaintiff for unpaid overtime wages, liquidated damages, attorneys' fees, costs, and interest under the FLSA.

19. The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). Under the FLSA, employers are required to pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of forty hours in a workweek. *See* 29 U.S.C. § 207.

20. All Defendants are covered employers and enterprises subject to the provisions of the FLSA since it is engaged in commerce and generates annual revenue in excess of $500,000.

21. Alternatively, Defendants are covered employers subject to the provisions of the FLSA because they are employers who have employees who are engaged in interstate commerce, also referred to as "Individual Coverage".

22. During the relevant time period, Plaintiff was an employee of Defendants covered by the provisions and protections contained in the FLSA.

23. Plaintiff's job duties are such that she was engaged in commerce as defined by the FLSA. Plaintiff was engaged in interstate commerce because she used interstate instrumentalities such as, but not limited to, interstate credit card payment processing machines, internet advertisements, interstate telephones to call and receive calls for purposes of conducting business, utilized products that were purchased from out-of-state vendors, and sent and received out-of-state mail.

**BACKGROUND FACTS**

24. At all material times, Defendants are in the child daycare and learning center industry, providing cognitive, physical, and social education to children throughout the United States.

25. Plaintiff was hired on or around July 26, 2018 as a classroom teacher at the Eastmark Learning Experience. Plaintiffs job duties included writing and implementing curriculum, activities, programs, and projects for the children, as well as overseeing their daily routines and caring for their basic needs.

-5-

26. The Eastmark Learning Experience facility is located in Plaintiff's neighborhood, and many of Plaintiff's friends and neighbors use the services offered at the Eastmark Learning Experience facility.

27. On or around July 16, 2019, after several promotions, Plaintiff was promoted to director at the Eastmark Learning Experience facility.  These job duties included running operations and processes of the center, including payroll, expenses, managing family accounts, and hiring teachers, among many other duties.

28. Once Plaintiff was appointed as director, she began receiving complaints from other employees that Defendants were shorting many of the employees on their hours worked.

29. Defendants uses both a computer system that tracks logging in and out for the employees as well as a written log to also track employee time.

30. In response to several complaints, Plaintiff looked into the employee time records on the computer system and noticed that there were several manual overrides of time entered on each employee's records.

31. Although Plaintiff found that the computer system did not reveal who was conducting the manual overrides, Defendant Mr. Patel was the owner and manager of the Eastmark Learning Experience facility and, given his ability to access the employee time records on the computer system, had the ability to perform the manual overrides.

32. On September 20, 2019, Plaintiff called Heather Dins, Arizona Regional Manager for Learning Experience, to report that many employees were being shorted time, but was unable to reach Ms. Dins.

33. Plaintiff then called Ms. Dins' superior, Jeanne LaRiviere, Regional Manager of the western region, to report that many employees were being shorted a significant amount of time by Defendant Mr. Patel.  Plaintiff explained to Ms. LaRiviere that she had evidence of this happening.

34. Plaintiff also reported to Ms. LaRiviere that the timesheets of the employees were not accounting for their PTO. Plaintiff further reported that some employees had considered calling the police because the act of shorting their time was theft.

35. Moreover, Plaintiffs reported that the shorting of their time caused them to lose overtime compensation as required under the FLSA.

36. Plaintiff told Ms. LaRiviere that if Ms. LaRiviere did not help, teachers were going to walk out of the Eastmark Learning Experience facility. Ms. LaRiviere responded to Plaintiff that Defendant Mr. Patel's alleged practices were illegal.

37. On October 2, 2019, Ms. LaRiviere texted Plaintiff and asked her to send copies of the sign in/out logs and time cards.

38. Plaintiff, along with assistant director Megan Waller, sent documentary evidence to Ms. LaRiviere at her request.

39. Shortly thereafter, Defendant Mr. Patel started asking around the Eastmark Learning Experience facility to determine who had reported him to the Learning Experience corporate office and began threatening employees with legal action.

40. Upon information and belief, on October 3, 2019, the Learning Experience corporate office told Defendant Mr. Patel to pay the employees who were shorted or the corporate office would call the police.

41. On October 3, 2019, Plaintiff was brought into Defendant Mr. Patel's office with an assistant director, Ashley. Defendant Mr. Patel told Plaintiff the following: "I know it was you [Plaintiff] and Megan who turned me in to corporate. You're done here." At that moment, Defendant Mr. Patel terminated Plaintiff's employment. Defendant Mr. Patel later terminated Ms. Waller's employment over the phone.

42. Immediately after terminating Plaintiff, Defendant Mr. Patel followed Plaintiff around the facility as she gathered her things to leave, berating her with taunts and insults. One such comment was that the corporate Learning Experience had Mr. Patel's interests at heart, not Plaintiff or the other employees.

# COUNT I

## (FLSA Retaliation in Violation of 29 U.S.C. § 215(a)(3))

43. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

44. The FLSA prohibits any person from discharging or in any other manner discriminating against any employee who complains of a violation of the act or causes to be instituted any proceeding under or related to the act.

45. Plaintiff engaged in protected activity when she (1) discussed with employees of the Eastmark Learning Experience facility Defendants' unlawful failure to pay for all hours worked, including overtime owed pursuant to the FLSA and (2) complained to Ms. LaRiviere about Defendants' unlawful failure to pay for all hours worked, including overtime owed pursuant to the FLSA.

46. As a direct and proximate result of Plaintiff's complaints about Defendants' unlawful overtime and wage practices, Plaintiff eventually had the adverse employment action of being removed from work by Defendants.

47. Defendants acted in retaliation when they removed Plaintiff from her job.

48. There is a causal connection between Plaintiff engaging in the protected activity and the adverse employment action of removing Plaintiff from work in that but for Plaintiff engaging in the protected activity, Defendants would not have ended Plaintiff's employment. Plaintiff's protected activity was a motivating factor in the decision by Defendants to remove Plaintiff from work.

49. Defendants' actions were punitive, malicious, and in direct retaliation for her complaints of FLSA violations.

50. As a direct and proximate result of Defendants' retaliation, Plaintiff suffered lost wages, emotional distress, embarrassment, and other economic and non-economic losses.

51. Defendants' conduct in taking adverse action against Plaintiff's employment was done with ill will, spite, malice, for the purpose of injuring Plaintiff, and with a complete indifference of Plaintiff's rights.

52. Defendants' conduct in taking adverse action toward Plaintiff's employment harmed Plaintiff and was malicious, oppressive, or in reckless disregard of her rights.

53. Defendants' therefore should be required to respond to Plaintiff in the form of a punitive or exemplary damage award and an emotional distress damage award under federal law.

## COUNT II

**(Whistleblower Retaliation in Violation of A.R.S. § 23-1501 *et seq.*)**

54. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

55. Under A.R.S. § 23-1501(A)(3)(c)(ii), an employer is prohibited from discharging an employee for whistleblowing activities.

56. In compliance with A.R.S. § 23-1501(A)(3)(c)(ii), Plaintiff disclosed in a reasonable manner to Jeanne LaRiviere a reasonable belief that Defendants had violated, were violating, or would violate a statute of the state of Arizona. Plaintiff reasonably believed that Ms. LaRiviere was in a managerial or supervisory position with the authority to investigate and take action to prevent further violations.

57. Under A.R.S. § 13-1802, a person commits theft if, without lawful authority, the person knowingly controls property of another with the intent to deprive the other person of such property. Plaintiff made a good faith complaint to Ms. LaRiviere that Defendant Mr. Patel took control of the wages owed to many employees with the intent to deprive those employees of such property.

58. Under A.R.S. § 13-2310, obtaining benefits pursuant to a scheme to defraud through misrepresentations or material omissions is a fraud. Plaintiff made a good faith complaint to Ms. LaRiviere that Defendant Mr. Patel was deceiving, concealing, and

omitting material information to several Learning Experience employees concerning compensation for hours worked.

59. Less than a month after Plaintiff complained to Ms. LaRiviere, Defendants terminated Plaintiff.

60. Plaintiff was terminated in whole or in part because of her whistleblowing complaints made on behalf of the employees who were being shorted their hours.

61. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation and degradation, pain and suffering, severe mental anguish and distress, has been wrongfully discharged, and has suffered a loss of income in the form of past, present, and future earnings, along with other monetary and non-monetary benefits due to her.

62. Plaintiff seeks, as a result of her wrongful termination, compensatory damages incurred or to be incurred by her in an amount to be determined at trial.

63. Upon information and belief, Defendants acted with an evil mind and intentionally caused damages to Plaintiff or acted with a conscious disregard of a substantial risk of harm that would result to Plaintiff as a result of their actions, permitting Plaintiff to recover punitive damages against Defendants.

**WHEREFORE**, Plaintiff demands judgment against Defendants, and prays this Court to:

 a. Declare and find that Defendants violated the FLSA, 29 U.S.C. § 215(a)(3), by retaliating against Plaintiff by terminating her employment;

 b. Award Plaintiff compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), to be determined at trial;

 c. Award Plaintiff compensatory and liquidated damages under 29 U.S.C. § 216(b);

 d. Award Plaintiff attorneys' fees and costs as allowed by 29 U.S.C. § 216(b);

   e. Award Plaintiff all relief available under Plaintiff's whistleblower retaliation claim in violation of A.R.S. § 23-150, including full back pay, front pay, and reimbursement for all lost monetary and non-monetary benefits, all to be proven at trial;

   f. Award Plaintiff emotional distress damages and punitive damages;

   g. Award Plaintiff prejudgment and post-judgment interest as provided by law; and

   h. Award Plaintiff such other relief as this Court deems fair and equitable, including injunctive relief.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

**DATED** this 8th day of January, 2020.

**JACKSON WHITE**

s/ Nathaniel J. Hill
By: Nathaniel J. Hill, SBN 028151
   Grant S. Cragun, SBN 034332
40 North Center Street, Suite 200
Mesa, Arizona   85201
*Attorneys for Plaintiff*

F:\VWXYZ\Worrell, Kathy (Stacy)\Pleadings\Worrell Complaint FINAL.V2.docx